UNITED STATES of America,
Plaintiff–Appellee,

v.

Patrick Nolan McSWAIN,
Defendant–Appellant.

No. 93–4198.

United States Court of Appeals,
Tenth Circuit.

July 11, 1994.

G. Fred Metos, of McCaughey & Metos, Salt Lake City, UT, for defendant-appellant.

Bruce C. Lubeck (Scott M. Matheson, Jr., U.S. Atty., was with him on the brief), Asst. U.S. Atty., Salt Lake City, UT, for plaintiff-appellee.

Before TACHA and McKAY, Circuit Judges, and SHADUR,* District Judge.

TACHA, Circuit Judge.

Defendant-appellant Patrick Nolan McSwain entered a conditional guilty plea under Fed.R.Crim.P. 11(a)(2) to possession of a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1), and to carrying and using a firearm during and in relation to a drug trafficking offense, 18 U.S.C. § 924(c). Mr. McSwain now brings this appeal challenging the district court's denial of his motion to suppress evidence obtained during a warrantless search of his vehicle. Mr. McSwain argues for suppression on the ground that he was unlawfully detained. We exercise jurisdiction under 28 U.S.C. § 1291 and reverse and remand.

## I. Background

On the afternoon of June 9, 1993, Utah Highway Patrol Trooper Dennis Avery ("Trooper Avery") was patrolling eastbound Interstate 70 in Sevier County, Utah, when he noticed an approaching vehicle in his rear view mirror. The vehicle did not have a

---

* The Honorable Milton I. Shadur, Senior District Judge, United States District Court for the North-ern District of Illinois, sitting by designation.

front license plate, and as it passed, Trooper Avery noticed that the vehicle did not have a rear license plate either, though it did have a temporary registration sticker posted in the rear window. Trooper Avery was unable to read the expiration date on the sticker because it appeared to be covered with reflective tape. He stopped the vehicle to verify the validity of the temporary sticker. Trooper Avery's patrol car was equipped with a video camera that recorded the stop and the ensuing conversation between Trooper Avery and the vehicle's driver, Mr. McSwain.

As Trooper Avery approached the vehicle on foot, he noticed that the temporary registration sticker was from Colorado and that the reflective tape merely was a new device used by the State of Colorado to prevent alteration of the sticker's expiration date. Trooper Avery observed that the sticker was valid and had not expired. He then approached Mr. McSwain, made a comment about the sticker, and proceeded to ask whether Mr. McSwain had just bought the vehicle and whether he was taking it for a test drive. Trooper Avery next requested identification and vehicle registration. He testified that he routinely asks for these documents upon stopping a vehicle to ensure that the driver is licensed and is the vehicle's owner. Mr. McSwain produced a Colorado registration in his name and said that he did not have a driver's license, though he provided other identification. Mr. Fisher, a passenger in the vehicle's rear seat, produced a valid driver's license. Trooper Avery then asked them where they had been and Mr. McSwain told Trooper Avery that they had been gambling in Las Vegas, Nevada. Trooper Avery, however, observed on the front seat a receipt dated June 8, 1993 (the prior day) from a Jiffy Lube in Pasadena, California.

Trooper Avery returned to his patrol car to request a computer check. He testified that he routinely runs a criminal history check on persons driving without a license and who otherwise arouse his suspicions. Dispatch informed Trooper Avery that Mr. McSwain had a suspended driver's license and a prior record for drug and gun violations and assaults.

Trooper Avery returned to the vehicle and gave back Mr. Fisher's license, Mr. McSwain's identification and the vehicle registration. Resting his arms on the driver's door, Trooper Avery inquired, "What are you doing over in Denver, is that where you live?" He then asked if they were "packing" any alcohol, firearms or drugs in the vehicle. After Mr. McSwain answered in the negative, Trooper Avery asked, "Do you mind if I look?" Mr. McSwain responded, "Go ahead." Trooper Avery said, "Why don't you step out a sec?" He then explained that, because Mr. McSwain's license had been suspended, Mr. Fisher would have to drive.

Trooper Avery searched the interior of the car, conversing with Mr. McSwain and Mr. Fisher throughout the search. Trooper Avery specifically asked and received Mr. Fisher's permission to look inside a briefcase lying in the back seat. He then retrieved the keys from the ignition and approached the rear of the vehicle. He asked Mr. McSwain and Mr. Fisher if there were just clothes in the trunk and they said, "Yes." After examining several items in the trunk, Trooper Avery found a green duffel bag. He asked who it belonged to, and Mr. McSwain said it belonged to him. Trooper Avery opened the duffel bag and discovered a set of scales, a gun and a plastic bag containing a substance which appeared to be crack cocaine. Trooper Avery asked Mr. McSwain if the substance in the bag was cocaine, and Mr. McSwain indicated that it was. Trooper Avery arrested Mr. McSwain and Mr. Fisher.

## II. Discussion

Mr. McSwain argues that the evidence found in the trunk of his vehicle was the fruit of an unlawful detention and that the trial court therefore erred in denying his motion to suppress. In reviewing the denial of a motion to suppress evidence, we must accept the trial court's findings of fact unless they are clearly erroneous. *United States v. Nielsen*, 9 F.3d 1487, 1489 (10th Cir.1993). Additionally, we must view the evidence on appeal in the light most favorable to the government. *United States v. Pena*, 920 F.2d 1509, 1513 (10th Cir.1990), *cert. denied,*

501 U.S. 1207, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991). In examining the district court's findings, we are mindful that the credibility of the witnesses and the weight to be given the evidence together with the inferences, deductions and conclusions to be drawn from the evidence, are to be determined by the trial judge. *United States v. Walraven*, 892 F.2d 972, 973 (10th Cir.1989). However, the ultimate determination of reasonableness is a conclusion of law that we review de novo. *United States v. Horn*, 970 F.2d 728, 730 (10th Cir.1992).

### A. Lawfulness of Detention

■■ The Fourth Amendment protects against unreasonable searches and seizures. "The stopping of a vehicle and the detention of its occupants constitute a 'seizure' within the meaning of the Fourth Amendment." *United States v. Walker*, 933 F.2d 812, 815 (10th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992). To determine the reasonableness of such a seizure, we employ a dual inquiry: "[1] whether the officer's action was justified at its inception, and [2] whether [the action] was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Dewitt*, 946 F.2d 1497, 1501 (10th Cir.1991) (quoting *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1878–79, 20 L.Ed.2d 889 (1968)), *cert. denied,* — U.S. —, 112 S.Ct. 1233, 117 L.Ed.2d 467 (1992); *see also United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985); *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983) ("The scope of the detention must be carefully tailored to its underlying justification."). The first prong of this inquiry is not at issue here because Mr. McSwain concedes the propriety of the initial stop. He argues, however, that the initially valid stop evolved into an unreasonable detention. We agree.

Trooper Avery stopped Mr. McSwain for the sole purpose of ensuring the validity of the vehicle's temporary registration sticker. Once Trooper Avery approached the vehicle on foot and observed that the temporary sticker was valid and had not expired, the purpose of the stop was satisfied. Trooper Avery's further detention of the vehicle to question Mr. McSwain about his vehicle and travel itinerary and to request his license and registration exceeded the scope of the stop's underlying justification.

■ The government nevertheless contends that Tenth Circuit precedent entitles Trooper Avery to engage in such "minimally intrusive" conduct. Though we have held in several cases that an officer conducting a routine traffic stop may inquire about "identity and travel plans," *United States v. Rivera*, 867 F.2d 1261, 1263 (10th Cir.1989), and may "request a driver's license and vehicle registration, run a computer check, and issue a citation," *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir.1988); *see also United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir.1993), these cases—cited by the government—are inapposite. They all involve situations in which the officer, at the time he or she asks questions or requests the driver's license and registration, still has some "objectively reasonable articulable suspicion" that a traffic violation "has occurred or is occurring." *Soto*, 988 F.2d at 1554 (speeding); *see also United States v. Trimble*, 986 F.2d 394 (10th Cir.1993) (expired license plate), *cert. denied,* — U.S. —, 113 S.Ct. 2943, 124 L.Ed.2d 691 (1993); *Rivera*, 867 F.2d at 1263 (tailgating); *Guzman*, 864 F.2d at 1519 (seat belt violation). Such cases stand in sharp contrast to the facts of the instant case: Trooper Avery's reasonable suspicion regarding the validity of Mr. McSwain's temporary registration sticker was completely dispelled *prior* to the time he questioned Mr. McSwain and requested documentation. *Cf. United States v. Millan–Diaz*, 975 F.2d 720, 722 (10th Cir.1992) (holding that reasonable suspicion of illegal alien smuggling was dispelled as soon as border patrol agent determined that no illegal aliens were in the vehicle). Having no "objectively reasonable articulable suspicion that illegal activity ha[d] occurred or [was] occurring," *Soto*, 988 F.2d at 1554, Trooper Avery's actions in questioning Mr. McSwain and requesting his license and registration exceed-

ed the limits of a lawful investigative detention and violated the Fourth Amendment.[1]

The government asserts that not allowing an officer to request a driver's license and registration in this type of case will require the officer to "stop a vehicle, approach the vehicle on foot, observe it, then walk away, get in his police car, drive away and wave, leaving the stopped citizen to wonder what had just occurred." Our holding does not require such absurd conduct by police officers. As a matter of courtesy, the officer could explain to drivers in Mr. McSwain's circumstances the reason for the initial detention and then allow them to continue on their way without asking them to produce their driver's license and registration. *See Ohio v. Chatton*, 11 Ohio St.3d 59, 62–63, 463 N.E.2d 1237, 1240 (1984).

### B. Effect of Consent to Search

 A question remains as to whether Mr. McSwain's consent to the search of his vehicle cleansed the taint of the unlawful detention, thereby validating the search. "A search preceded by a Fourth Amendment violation remains valid if the consent to search was voluntary in fact under the totality of the circumstances." *United States v. Fernandez*, 18 F.3d 874, 881 (10th Cir.1994); *see also Guzman*, 864 F.2d at 1520. "The government bears the burden of proving the voluntariness of consent, and that burden is heavier when consent is given after an illegal [detention]." *Fernandez*, 18 F.3d at 881 (citations omitted); *see also United States v. Recalde*, 761 F.2d 1448, 1457 (10th Cir.1985). The government must demonstrate that Mr.

McSwain's consent to search is "sufficiently an act of free will to purge the primary taint of the illegal [detention]."[2] *United States v. Maez*, 872 F.2d 1444, 1453 (10th Cir.1989); *see also United States v. Lowe*, 999 F.2d 448, 451 (10th Cir.1993); *United States v. Mendoza–Salgado*, 964 F.2d 993, 1012 (10th Cir. 1992). No single fact is dispositive under the totality of the circumstances test, *Fernandez*, 18 F.3d at 882, but the three factors articulated in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), are especially relevant: "the temporal proximity of the illegal detention and the consent, any intervening circumstances, and, particularly, the purpose and flagrancy of the officer's unlawful conduct." *Walker*, 933 F.2d at 818 (citing *Brown*, 422 U.S. at 603–04, 95 S.Ct. at 2261–62); *see also Mendoza–Salgado*, 964 F.2d at 1011; *Maez*, 872 F.2d at 1454.

The district court concluded that Mr. McSwain voluntarily consented to the search. This finding is insufficient, however, because the court incorrectly found that the protracted detention of Mr. McSwain was lawful and therefore did not conduct the *Brown* "taint analysis." *See Fernandez*, 18 F.3d at 881–82 n. 7; *see also Recalde*, 761 F.2d at 1457. We conduct the taint analysis here "because the proceedings below resulted in a record of amply sufficient detail and depth from which the determination may be made." *Fernandez*, 18 F.3d at 881–82 n. 7 (internal quotations omitted); *see also Lowe*, 999 F.2d at 451 n. 5; *Guzman*, 864 F.2d at 1521 n. 10.

 The record shows that Mr. McSwain's consent to search was not suffi-

---

1. We point out that when police officers engage in a "consensual encounter" with a particular individual "they may generally ask questions of that individual [and] ask to examine the individual's indentification," even though the officers have no reasonable suspicion regarding the individual. *Florida v. Bostick*, 501 U.S. 429, 433–35, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991) (citations omitted). A consensual encounter occurs where a "reasonable person would feel free to disregard the police and go about his business." *Id.* (internal quotations omitted). Here, no consensual encounter occurred because Trooper Avery *pulled over Mr. McSwain's vehicle* and began asking him questions and requesting his documentation, indicating "to a reasonable person that he was not at liberty to ignore the

police presence and go about his business." *Id.* at 437, 111 S.Ct. at 2387 (internal quotations omitted). *Cf. United States v. Langston*, 970 F.2d 692, 698–99 n. 3 (10th Cir.) (finding consensual encounter where driver *voluntarily* stopped car after police drove beside car and made eye contact with driver), *cert. denied*, — U.S. ——, 113 S.Ct. 439, 121 L.Ed.2d 358 (1992).

2. Though the "voluntariness in fact" and "sufficiently an act of free will" tests are often blurred and frequently overlap, the government must demonstrate *both* 1) that the consent was voluntary in fact, and 2) that there was a break in the causal connection between the illegal detention and the consent. *United States v. Melendez–Garcia*, 28 F.3d 1046, 1054 (10th Cir.1994).

cient to purge the taint of his illegal detention. After Mr. McSwain denied having any contraband in the vehicle, Trooper Avery asked, "Do you mind if I look," to which Mr. McSwain replied, "Go ahead." Trooper Avery's manner was pleasant and he did not use an insisting tone of voice. However, several elements suggesting lack of voluntariness were present. Though possibly not designed to coerce or intimidate, Trooper Avery was leaning over and resting his arms on the driver's door when he asked for consent to search.[3] Additionally, though Trooper Avery's return of Mr. Fisher's and Mr. McSwain's identification and the vehicle registration may be a factor indicating that Mr. McSwain was free to leave, *see Soto,* 988 F.2d at 1557 (analyzing Tenth Circuit cases and noting that returning the driver's documentation is necessary, but not always sufficient, to show that the driver is free to proceed on his or her way), Trooper Avery failed to specifically inform Mr. McSwain that he was free to leave the scene or that he could refuse to give his consent. These are "important factors in our consideration." *Fernandez,* 18 F.3d at 882; *see also id.* ("Although informing a defendant of his right to refuse consent is not a prerequisite to establishing voluntary consent, we consider it a factor particularly worth noting.") (citations and internal quotations omitted);[4] *United States v. Ward,* 961 F.2d 1526, 1533 (10th Cir.1992) (advising an individual of the right to refuse consent is important because it shows the individual that the police officer is prepared to respect the assertion of that right); *Recalde,* 761 F.2d at 1459 (finding consent tainted where officer held the driver's ticket, license and registration without telling the driver he was free to leave).

We next consider the three "*Brown*" factors." The first two factors weigh heavily against finding the taint cleansed. Mr. McSwain consented to the search only a few minutes after being illegally detained and questioned by Trooper Avery. *See Fernandez,* 18 F.3d at 883 ("only moments" elapsed

between illegal detention and consent); *Ward,* 961 F.2d at 1534 ("only minutes" passed between illegal seizure and consent); *Maez,* 872 F.2d at 1447, 1455 (consent form signed thirty minutes after illegal arrest). Also, there were absolutely no intervening circumstances in the short period of time between the illegal detention and Mr. McSwain's consent. *See Fernandez,* 18 F.3d at 883 (finding no intervening circumstances present); *United States v. Peters,* 10 F.3d 1517, 1523 (10th Cir.1993) (same); *Maez,* 872 F.2d at 1455 (same). These factors both indicate that there was no "break in the causal connection between the illegality and the evidence thereby obtained." *Fernandez,* 18 F.3d at 883 (quoting *Recalde,* 761 F.2d at 1458).

Finally, the third *Brown* factor—the purpose and flagrancy of Trooper Avery's conduct—weighs against finding the taint purged. Trooper Avery testified that he detained Mr. McSwain only because he routinely requests a driver's license and registration upon stopping a vehicle to ensure that the driver is licensed and is the owner of the vehicle. The record, however, suggests that Trooper Avery's aims in this case were not so narrow. Before he even requested identification and vehicle registration, Trooper Avery inquired whether Mr. McSwain had just bought the vehicle and whether he was just taking it for a test drive. Requesting identification and vehicle registration, Trooper Avery then quizzed the vehicle's occupants about their travel itinerary. Later, upon returning their documentation, he asked what they were doing in Denver and if that was where they lived. This unnecessary questioning, viewed in its factual context, suggests that Trooper Avery detained Mr. McSwain's vehicle with a "quality of purposefulness," *Brown,* 422 U.S. at 605, 95 S.Ct. at 2262, embarking upon a fishing expedition "in the hope that something might turn up," *id. Cf. Fernandez,* 18 F.3d at 883 (finding "quality of purposefulness" because officer detained driver based "solely on a tension in the air and his vague hunch that something

---

**3.** Trooper Avery testified that "[u]nfortunately, it is a habit" of his to lean on the driver's window.

**4.** We point out that just because an officer informs an individual of the right to refuse consent does not necessarily mean the individual's con-

sent will be voluntary in fact. *See Fernandez,* 18 F.3d at 882 n. 8 (citing cases in which consent did not purge taint of illegal police actions even though individuals signed consent to search form or were informed of right to refuse consent).

was afoot, with the hope that something might turn up") (internal quotations omitted); *Peters,* 10 F.3d at 1523 (finding flagrant misconduct where agent stopped a vehicle "solely on an unsupported, inarticulable 'hunch'" supplied by another officer who previously had stopped and searched the vehicle and found no evidence of drugs or illegal activity).

Considering the totality of the circumstances and giving special emphasis to the three *Brown* factors, we conclude that Mr. McSwain's consent was not "sufficiently an act of free will to purge the primary taint of the illegal [detention]." *Maez,* 872 F.2d at 1453.

### III. Conclusion

Trooper Avery unlawfully detained Mr. McSwain. Because Mr. McSwain's subsequent consent to the search of his vehicle was not sufficient to purge the taint of the illegal detention, we **REVERSE** the district court's denial of Mr. McSwain's motion to suppress the evidence found in his vehicle. We **REMAND** for further proceedings consistent with this opinion.