UNITED STATES COURT OF APPEALS
**Filed 8/26/96**
TENTH CIRCUIT

---

UNITED STATES OF AMERICA, )
)
     Plaintiff-Appellant, )
  v. )   No. 95-2216
) (D.C. No. CR-95-130-JP)
ESSEX DWAYNE COOK, ) (D. New Mexico)
)
     Defendant-Appellee. )

---

ORDER AND JUDGMENT[*]

---

Before TACHA, REAVLEY[**] and LUCERO, Circuit Judges.

The government appeals the district court's decision to grant Cook and Smith's motions to suppress.[1] Cook and Smith were indicted for possession with intent to distribute more than 50 grams of cocaine base, and for the possession of a firearm during that crime.[2] The district court determined that the police violated the defendants' Fourth Amendment rights, and that the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Thomas M. Reavley, United States Court of Appeals, Fifth Circuit, sitting by designation.

[1] See 18 U.S.C. § 3731

[2] 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); 18 U.S.C. § 2.

evidence should be suppressed.

Cook and Smith were traveling from Little Rock, Arkansas, to California aboard an Amtrack train. Sometime prior to arriving in Albuquerque, New Mexico, the two men upgraded from coach class to a private sleeper. When the train arrived in Albuquerque, it was met by Albuquerque police officer Tate. She was a member of a drug interdiction unit being operated by local police. Officer Tate regularly met the Eastbound and Westbound Amtrack trains, to look for drugs or drug money being transported aboard the train. After checking other unsuccessful leads, Tate and her partner asked the conductor if any passengers had upgraded from coach to a private sleeper compartment recently. She testified that in her experience drug traffickers tended to travel in the private compartments and often upgraded once aboard. The conductor informed her that Cook and Smith had recently upgraded.

Officer Tate went to Cook and Smith's compartment and knocked on the door, while her partner remained in the hallway. Officer Tate recorded her entire confrontation with the defendants on an audio tape recorder. Cook answered the door, and Tate identified herself as a police officer and asked whether she could ask them some questions. The private compartment contained a lower and upper berth on one side of the room and was approximately three feet wide by six feet deep. Cook was sitting upright on the lower berth, and Smith was sitting above him on the upper berth. Tate asked for their tickets and identification. Cook and Smith produced their tickets and Smith

2

produced his identification.  Cook informed Officer Tate that he had left his identification at a cousin's house in Arkansas.

After a brief inspection, Officer Tate returned the documents.  Officer Tate then began asking a series of questions regarding the individuals' luggage.  Tate noticed a blue duffel bag in the room and began to inquire whose bag it was. The following exchange occurred:

Tate:     Would you give me permission to search your bag?
          Uh, Kevin, or, I don't know whose bag it is.
          Whose bag is it?

Smith:    It's his bag.

Cook:     Yea.

Detective Tate began conducting the search of bag, then inquired,

Tate:     Uh, what I do is work an interdiction program here
          with Drug Enforcement, and we just talk to people
          everyday going east to west as well as west to
          east.  Starting to use the train to transport
          narcotics and large sums of money associated with
          narcotics.  Um, this is your bag?  All your stuff
          is in here?  (Emphasis added).

The district court determined that Cook's answer only indicates that he claimed ownership of the bag, and that it does not demonstrate consent for the officer to search the bag.  The lack of consent, according to the district court, is further supported by officer Tate's inquiry as to the ownership of the bag a second time after she had searched the bag.  While no incriminating evidence was found in this bag, the district determined that the search was conducted without consent and in violation of the defendants' Fourth Amendment rights.

On the heels of the unlawful search, Tate inquired about the

3

two other bags in the room. After obtaining Smith's consent to search his black bag, Tate discovered a handgun which Cook admitted owning. Officer Tate testified that she was aware at that moment that Cook believed he was about to be arrested. While talking with Cook at that time, officer Tate stated, "Well, I just want to search your stuff first, okay." The officer then attempted to discover who owned the last remaining bag, a bowling ball bag. Both Smith and Cook denied ownership, and informed her that the bag had been on board when the two arrived. Tate searched that bag and discovered approximately 400 gross grams of crack cocaine in fourteen clear plastic packages. The district court suppressed the evidence obtained from the later two bags based upon officer Tate's actions in searching the first bag. The government does not appeal the district court's finding that the defendant's Fourth Amendment rights were violated in regard to the search of the blue duffle bag; rather, the government argues that Smith's consent to search of the black bag and that the defendants' abandonment of the bowling bag were not tainted by the earlier Fourth Amendment violation.

**Discussion**

We review the factual findings underlying the district court's ruling under a clearly erroneous standard; Fourth Amendment reasonableness is a question of law reviewed de novo.[3] We view the evidence in the light most favorable to the prevailing party.[4]

"Generally, evidence that is acquired because of prior illegal activity must be excluded as fruit of that illegality."[5] "A search preceded by a Fourth Amendment violation remains valid if the consent to search was voluntary in fact under the totality of the circumstances."[6] The burden of proof is upon the government to demonstrate the voluntariness of the consent, that burden is heavier where the consent is given after a Fourth Amendment violation.[7] It is not always that the evidence is to be excluded, the question is whether the evidence "has been obtained 'by means sufficiently distinguishable to be purged of

---

[3] United States v. Boone, 62 F.3d 323, 325 (10th Cir. 1995), cert. denied, 116 S.Ct. 576 (1996).

[4] United States v. Botero-Ospina, 71 F.3d 783, 785 (10th Cir. 1995) (en banc); United States v. McSwain, 29 F.3d 558, 560 (10th Cir. 1994).

[5] Id. (citing Wong Sun v. United States, 83 S.Ct. 407, 415-16 (1963)).

[6] McSwain, 29 F.3d at 562; United States v. Fernandez, 18 F.3d 874, 881 (10th Cir. 1994).

[7] McSwain, 29 F.3d at 562; Fernandez, 18 F.3d at 881.

the primary taint.'"[8] To determine whether the taint has been purged we look to three factors: the time lapse between the illegality and the acquisition of the evidence, the purpose and flagrancy of the official misconduct, and the presence of intervening circumstances.[9] "Because the question is fact intensive, the district court's findings must be upheld unless they are clearly erroneous."[10] We are presented with a very close case; however, based upon the district court's factual findings, we affirm.

The district court held that the taint of illegality was not purged in this case. There were no intervening circumstances between the illegal search of the blue bag and the subsequent two searches. The search of the other two bags occurred within seconds (26 seconds later for the black bag and 45 seconds after that search for the bowling bag.) Finally, while officer Tate testified that she believed she had consent, it is clear from her questions that she was not even sure of the ownership of the blue bag before she began her search. Additionally, due to Tate's actions, Smith testified that "he felt powerless to contest [Tate's] actions after she searched the blue bag without consent." As the district court summarized, Smith believed it

_____

[8] Boone, 62 F.3d at 325 (quoting Wong Sun, 83 S.Ct. at 417).

[9] Brown v. Illinois, 95 S.Ct. 2254, 2261-62 (1975); Boone, 62 F.3d at 325-26.

[10] United States v. Eylicio-Montoya, 70 F.3d 1158, 1165 (10th Cir. 1995).

would have been pointless to object.

The government argues that Smith and Cook abandoned the bowling bag, and therefore, could not assert their Fourth Amendment rights. However, "[w]hen an alleged abandonment follows a Fourth Amendment violation, the issue is whether he abandonment of the property was voluntary."[11]  Because, Smith believed he was powerless to object to Tate's actions, that is based upon her past performance she was going to search their bags anyway, the abandonment was not voluntary.

Based upon the factual findings of the district court, we affirm.

                              Entered for the Court

                              Thomas M. Reavley
                              Circuit Judge

---

[11]  <u>United States v. Ward</u>, 961 F.2d 1526, 1535 (10th Cir. 1992).