BALDOCK, Circuit Judge,
dissenting.
Let me begin by clarifying where the Court and I agree and disagree. We agree Trooper Cason’s stop of Defendants’ truck was justified based on his reasonable suspicion the license plate failed to comply with 47 Okla. Stat. § 1113.A. We disagree, however, on whether the truck’s license plate actually failed to comply with § 1113.A, thus justifying Defendants’ continuing detention. For reasons which follow, Defendants in my view did not violate § 1113.A. Instead, Trooper Cason’s reasonable suspicion that Defendants violated § 1113.A ended once the trooper walked within ten feet of the truck’s rear bumper and was able to identify the truck’s foreign license plate. At that point, Trooper Ca-son’s detention of Defendants was no longer reasonably related in scope to the circumstances which justified the stop at its inception and violated the Fourth Amendment. Despite its denial, the Court’s “prediction” as to how Oklahoma’s highest court might interpret § 1113.A in this case stands an established principle of criminal due process — that an ambiguous penal statute which fails to provide fair warning to the accused must be construed in favor of the accused — on its head. Accordingly, I dissent.
“[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring.” United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir.1995) (en banc). Once an officer discovers that a traffic violation has not occurred, however, the law requires the officer to allow the driver to proceed without further delay. United States v. McStoain, 29 F.3d 558, 561-62 (10th Cir.1994). “Further delay is justified only if the officer has reasonable suspicion of [additional] illegal *1152 activity or if the encounter has become consensual.” United States v. Holt, 264 F.3d 1215, 1221 (10th Cir.2001) (en banc).
In McSwain, the officer stopped defendant’s vehicle solely to verify the validity of a temporary registration sticker which “appeared to be covered with reflective tape.” McSwain, 29 F.Bd at 560 (emphasis added). Upon approaching the vehicle on foot, the officer observed the sticker was not covered with reflective tape and appeared valid. We concluded the purpose of the stop was satisfied at that point, and “further detention of the vehicle to question [defendant] about his vehicle and travel itinerary and to request his license and registration exceeded the scope of the stop’s underlying justification.” Id. at 561. McSwain is binding precedent and controls the disposition of this case:
The government nevertheless contends that Tenth Circuit precedent entitles Trooper Avery to engage in ... minimally intrusive conduct. Though we have held in several cases that an officer conducting a routine traffic stop may inquire about identity and travel plans, and may request a driver’s license and vehicle registration, run a computer check, and issue a citation, these cases ... are inapposite. They all involve situations in which the officer, at the time he or she asks questions or requests the driver’s license and registration, still has some objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring. Such cases stand in sharp contrast to the facts of the instant case: Trooper Avery’s reasonable suspicion regarding the validity of Mr. McSwain’s temporary registration sticker was completely dispelled prior to the time he questioned Mr. McSwain and requested documentation. Having no objectively reasonable articu-lable suspicion that illegal activity had occurred or was occurring, Trooper Avery’s actions in questioning Mr. McSwain and requesting his license and registration exceeded the limits of a lawful investigative detention and violated the Fourth Amendment.
Id. at 561-62 (internal citations, quotations, and brackets omitted).
The facts of our case are strikingly similar to the facts of McSwain. In McSwain, the officer had reasonable suspicion the vehicle’s temporary registration sticker might not be valid. After stopping the vehicle, however, the officer discovered the sticker appeared valid. At that point, the Fourth Amendment prohibited the officer from detaining defendant for questioning, but instead required the officer to allow defendant to proceed without further delay. Id. at 561.[1] Similarly, in our case, Trooper Cason had reasonable suspicion Defendants’ license plate was obscured. After stopping the vehicle, however, the trooper discovered the properly mounted license plate was issued in Mexico. To illustrate the point, a photograph of the truck’s rear license plate as it appeared at the time of the stop is included as an Appendix.
The Court reasons that because the license plate was not “clearly visible,” the plate failed to comply with 47 Okla. Stat. *1153 § 1113.A. The Constitution requires me to conclude otherwise. On its face, § 1113.A applies only to Oklahoma license plates, not out-of-state or foreign plates. Because the portion of subsection A on which the Court rests its case must be read in context to best understand the Court’s legal quandary, I quote subsection A in full, italicizing the Court’s focus:
§ 1113. Issuance of certificate of registration, license plates and decals — Requirements and Specifications for license plates — Issuance of license plates without documentary evidence of ownership ...
A. 1. Upon the filing of a registration application and the payment of the fees provided for in the Oklahoma Vehicle License and Registration Act, the Oklahoma Tax Commission shall assign to the vehicle described in the application a distinctive number, and issue to the owner of the vehicle a certificate of registration and one license plate or a yearly decal for the year that a license plate is not issued. The yearly decal shall have an identification number and the last two numbers of the registration year for which it shall expire. Except as provided by Section 1113A of this title, the license plate shall be affixed to the exterior of the vehicle until a replacement license plate is applied for. The yearly decal will validate the license plate for each registration period other than the year the license plate is issued. The license plate and decal shall be of such size, color, design and numbering as the Tax Commission may direct. However, yearly decals issued to the owner of a vehicle who has filed an affidavit with the appropriate motor license agent in accordance with Section 7-607 of this title shall be a separate and distinct color from all other decals issued under this section.
2. The license plate shall be securely attached to the rear of the vehicle, except truck-tractor plates which shall be attached to the front of the vehicle. The Tax Commission may, with the concurrence of the Department of Public Safety, by Joint Rule, change and direct the manner, place and location of display of any vehicle license plate when such action is deemed in the public interest. The license plate, decal and all letters and numbers shall be clearly visible at all times. The operation of a vehicle upon which the license plate is covered, overlaid or otherwise screened with any material, whether such material be clear, translucent, tinted or opaque, shall be a violation of this paragraph.
3. Upon payment of the annual registration fee provided in Section 1133 of this title, the Tax Commission or a motor license agent may issue a permanent nonexpiring license plate to an owner of one hundred or more commercial motor vehicles and for vehicles registered under the provisions of Section 1120 of this title. Upon payment of the annual registration fee, the Tax Commission shall issue a certificate of registration that shall be carried at all times in the vehicle for which it is issued.
(emphasis added).
Construing § 1113.A consistent with principles of due process, McSwain makes the illegality of Trooper Cason’s continuing detention of Defendants in this case apparent. Only Trooper Cason’s initial suspicion that the truck’s license plate was obscured justified the stop. Trooper Cason testified and the district court found, however, he was able to read the truck’s license plate and identify its foreign origin once he walked to within ten feet of the truck’s rear bumper. The license plate appeared properly mounted consistent with the design of the truck. At that *1154 point, Trooper Cason no longer had reasonable suspicion that illegal activity had occurred or was occurring. Bound by McSwain, the nearly identical facts of this case require me to conclude Trooper Ca-son’s continuing detention of Defendants exceeded the scope of the circumstances which justified the stop at its inception. See Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (An investigative detention “must be carefully tailored to its underlying justification ... [and] must ... last no longer than is necessary to effectuate the purpose of the stop.”).
Reading § 1113.A’s proscription against “covered, overlaid or otherwise screened” license plates in a vacuum, however, the Court holds such language applies to both resident and nonresident plates and provided Trooper Cason with the traffic violation he needed to detain Defendants for questioning. The Court, in effect, takes refuge in an ambiguous Oklahoma penal statute and construes the statute in favor of the Government. In so doing, the Court snubs the fundamental principle that due process requires a penal statute provide reasonable notice to the accused that his or her conduct is forbidden: “[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant’s conduct was criminal.” United States v. Lanier, 520 U.S. 259, 267, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).[2] To better understand the Court’s predicament, one need only ask whether a nonresident driving along an Oklahoma highway with a license plate mounted entirely eon-sistent with the design of a vehicle’s unaltered rear bumper, unobscured by any foreign material (frame, plastic or otherwise), would understand he or she was violating § 1113.A.
Because no Oklahoma court has interpreted § 1113.A, we have only the statute’s language, viewed in the proper context, to guide us. Section 1113.A’s plain language, considered in its entirety, applies only to certificates of registration, license plates, and decals issued by the State of Oklahoma — a proposition the Government, according to my reading of its brief, does not address. I concede Oklahoma courts might construe § 1113.A consistent with this Court’s view. The Court concedes Defendants’ construction of § 1113.A “might sometimes be a reasonable linguistic” interpretation. Court’s Op. at 14. Our differing views demonstrate that § 1113.A is at the very least ambiguous. Again, despite the Court’s denial, another telltale sign that the subject provision of § 1113.A is ambiguous is the Oklahoma legislature’s recent amendment to 47 Okla. Stat. § 12-204.1 (effective November 1, 2003). As the Court recognizes, § 12-204.1 applies § 1113.A’s rear license plate “display and visibility” provision to all vehicles traveling on Oklahoma highways. Court’s Op. at 13 n. 6; see also 47 Okla. Stat. § 12-101.1.B (“No person shall knowingly equip or operate on the highways of this state any vehicle with equipment unless it complies with the requirements of this chapter.”) (emphasis added). That § 12-204. l’s “legislative history does not reveal whether the amendment was intended as a clarification of prior law, or as *1155 a change” is unimportant. See Court’s Op. at 1147 n. 6. What is important is the amendment “casts light” on the obvious uncertainty as to § 1113.A’s application to nonresident vehicles such as Defendants’. Compare id.
According to the Court, my interpretation of § 1113.A is “novel.” Court’s Op. at 18. My reliance upon established constitutional principles and standard rules of statutory construction to construe § 1113.A— an ambiguous penal statute — is hardly “novel.” Given the entirety of § 1113.A addresses the “[issuance of certificate[s] of registration, license plates and decals” in the State of Oklahoma, my interpretation is not only reasonable, but correctly based upon the statute’s language and context. Moreover, the Court could not (and does not) assert that all of § 1113.A.2 applies to nonresident vehicles; otherwise, under the sentence directly preceding the Court’s focus, the Oklahoma Tax Commission would have plenary authority to burden interstate commerce by “direct[ing] the manner, place and location of display of any vehicle license plate” present upon its public roads, regardless of the origin of the plate.
Absent any Oklahoma decision construing § 1113.A, the Court declares, to quote a civil diversity case, “ ‘the federal court must attempt to predict what the state’s highest court would do.’ ” Court’s Op. at 1145 (quoting Wankier v. Crown Equipment Corp., 353 F.3d 862, 866 (10th Cir.2003)). And according to the Court, “we think it far more likely” that Oklahoma’s highest court would interpret § 1113.A.2 consistent with this Court’s view that a § 1113.A.2 violation actually occurred in this case. Id. at 12. The Court’s approach to statutory interpretation is appropriate for civil diversity cases, but in the criminal context, due process requires more. See United States v. Chanthasouxat, 342 F.3d 1271, 1278-79 (11th Cir.2003). The Court cites to cases that simply do not support the proposition that courts may “sweep behavior into [a penal] statute which the authors of the statute may have had in mind but failed to put into the plain language of the statute.” Id. at 1278. “Far more likely” is not the standard for construing a penal statute. The fundamental principle that due process requires a penal statute to provide reasonable notice of what conduct it forbids requires us to strictly construe § 1113.A. Due process does not permit a court to simply “predict the outcome,” lest courts construe a vague or ambiguous penal statute in favor of the Government. See id. Rather, reasonable notice to the accused that his or her conduct is unlawful is the benchmark.[3]
The Court’s reliance on three cases from intermediate state appellate courts outside Oklahoma, all of which involved the legality of the stop itself rather than its duration, are of little help in construing the precise language of § 1113.A. See Nelson v. State, 247 Ga.App. 455, 544 S.E.2d 189 (2001); People v. Miller, 242 Ill.App.3d 423, 183 Ill.Dec. 158, 611 N.E.2d 11 (1993); State v. Hayes, 8 Kan.App.2d 531, 660 P.2d *1156 1387 (1983). Without belaboring the point, the similarity between those States’ respective statutes and § 1113.A is that they all address the display of license plates. That’s as far as it goes. Yet the Court proclaims “[t]he same conclusion has been reached by the other [three] state courts that have addressed the issue.” Court’s Op. at 1148. My review of the three eases cited by the Court reveals no mention of the rule of lenity. My research further reveals that no court has construed a statute with language and context similar to § 1113.A’s.
The Court claims my construction of § 1113.A “would lead to the absurd result that out-of-state drivers in Oklahoma are free to drive with obscured license plates, or no plates at all.” Court’s Op. at 1147. Nothing could be further from the truth. A vehicle traveling along a public road without a license plate presents a suspicious circumstance necessarily giving rise to reasonable suspicion of criminal activity, thereby allowing a police officer to stop the vehicle and investigate the possibility the vehicle is stolen or otherwise a part of criminal activity. Further, as this case illustrates, a police officer is justified in stopping any vehicle traveling within Oklahoma which appears to have an obscured license plate. If upon closer inspection, a license plate is in fact “covered, overlaid or otherwise screened” and its origin is unas-certainable, the officer could detain the vehicle’s driver for proper questioning and investigation.
But this Court fails to persuade me Defendants’ properly mounted foreign license plate failed to comply with 47 Okla. Stat. § 1113.A. This case is not about “predicting” how Oklahoma’s highest court might interpret § 1113.A. This case is about due process of law which requires fair warning — warning Defendants did not receive.[4] Because the Court’s opinion sets a dangerous precedent by construing a state penal statute based upon little more than individual predilections, I dissent. I would reverse the decision of the district court and order the evidence suppressed.
*1157 [[Image here]]

. In McSwain, the Government asserted "that not allowing an officer to request a driver’s license and registration in this type of case will require the officer to 'stop the vehicle, approach the vehicle on foot, observe it, then walk away, get in his police car, drive away and wave, leaving the stopped citizen to wonder what had just occurred.' ” 29 F.3d at 562. We explained our holding did "not require such absurd conduct by police officers. As a matter of courtesy, the officer could explain to drivers in Mr. McSwain's circumstances the reason for the initial detention and then allow them to continue on their way without asking them to produce their driver’s license and registration.” Id.

. In Lanier, the Court explained that “as a sort of junior version of the vagueness doctrine, the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered.” 520 U.S. at 266, 117 S.Ct. 1219 (internal quotations and citations omitted). See State v. Patton, 837 P.2d 483, 484-85 (Okla.Crim.App.1992) (strictly construing a misdemeanor offense statute); see also United States v. Miller, 146 F.3d 274, 278-79 (5th Cir.1998) (strictly construing a misdemeanor offense statute to invalidate a traffic stop).

. The Court cites one federal criminal decision, a Ninth Circuit case which held an officer lacked reasonable suspicion to stop defendant's vehicle for lane straddling, for the proposition that in criminal cases "the federal court 'must predict how the court would interpret the code in light of [state] appellate court opinions, decisions from other jurisdictions, statutes, and treatises.’ ” Court's Op. at 1145 (quoting United States v. Colin, 314 F.3d 439, 443 (9th Cir.2002)). The other two cases the Court cites simply acknowledge a state court's prior construction of its own penal laws is binding on a federal court. See Mullaney v. Wilbur, 421 U.S. 684, 690-91, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); Rael v. Sullivan, 918 F.2d 874, 877 (10th Cir.1990). Absent an authoritative interpretation of § 1113.A itself, due process requires me to rely on its language and context.

. The Court mischaracterizes the premise of my dissent as "due process requires any penal statute containing an ‘ambiguity’ to be construed in favor of the defendant.” Court’s Op. at 1149 (emphasis added). I have never endorsed such a proposition and never will.