**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**August 18, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL BRYAN DELUCA,

Defendant - Appellant.

No. 20-8075
(D.C. No. 1:20-CR-00064-NDF-1)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **EBEL**, and **CARSON**, Circuit Judges.
_____

Officer Matt Freeman of the Cheyenne Police Department was driving along

West Linconway in Cheyenne, Wyoming when he encountered a black Cadillac that

displayed both a permanent license plate on its bumper and a temporary permit in its

rear window.  After the permanent license plate came up unregistered in the police

database, Officer Freeman pulled the vehicle over and spoke to the driver, Michael

Deluca.  When Deluca failed to provide his license and registration, Officer Freeman

returned to his police car to radio for the canine unit.  He also queried the name and

date of birth provided by Deluca in the police database but was unable to find a

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

match.  Officer Norris of the canine unit eventually arrived and deployed a drug dog to perform a sniff around the outside of the vehicle.  The drug dog alerted, prompting the officers to remove Deluca, and search the vehicle.  The officers discovered a gun in the car, and Deluca admitted that he was a convicted felon.

Deluca was arrested and charged with felon in possession of a firearm.  Deluca filed a motion to suppress the firearm found in his car, arguing that Officer Freeman lacked reasonable suspicion to stop his vehicle and that the officers lacked probable cause to search his vehicle.[1]  After an evidentiary hearing on the motion to suppress, the district court denied his motion as to the firearm.  Deluca pleaded guilty and was sentenced to 120 months' imprisonment.  He now appeals, contending first that the district court erred in denying his motion to suppress and second that the district court erred in declining to make an essential factual finding as to whether the drug dog was trained to alert on legal hemp as well as illicit drugs.  Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I.     BACKGROUND

On April 2, 2020, Officer Matt Freeman of the Cheyenne Police Department began following a black Cadillac on West Linconway in Cheyenne, Wyoming.  Defendant Michael Deluca was the driver of the Cadillac.  Deluca's Cadillac had a permanent Pennsylvania license plate affixed to its bumper and a temporary

---

[1] Deluca also moved to suppress his statements during the stop after he was removed from the car as the officers failed to provide his <u>Miranda</u> warnings.  The district court granted this part of his motion, and it is not before us on appeal.

registration permit displayed in its rear window. Officer Freeman could read the number on the permanent license plate, but he could not discern the number on the temporary permit. Officer Freeman ran the number on the permanent license plate through his computer database, which indicated that the license plate was not registered to any vehicle.

Officer Freeman turned on his emergency lights and pulled over Deluca into the parking lot of a motel. Officer Freeman asked for Deluca's driver's license and registration. Deluca replied that he had a valid license, registration, and proof of insurance, but did not have them with him in the car. Officer Freeman then asked Deluca for his name and date of birth so he could check on the status of his driver's license. Deluca identified himself as "Jack McAlley," gave a fictious date of birth, and said that he was nervous about being pulled over. Officer Freeman returned to his patrol car and radioed for Canine Officer Eric Norris to come to his location. Officer Freeman then used his patrol car computer to query the name and date of birth given by the Deluca but was unable to obtain any information. Freeman radioed police dispatch to try their databases, and they were also unsuccessful.

Officer Norris arrived after a few minutes and deployed a drug dog named Maverick to conduct a sniff around the vehicle. Maverick alerted on the driver's side of the car. The officers removed Deluca from his Cadillac, searched him, and moved him to a patrol car. The officers then searched the Cadillac and discovered a gun and Deluca's driver's license. A database check of Deluca's real name revealed an outstanding warrant for his arrest in Pennsylvania and that his license was suspended.

Deluca told the officers that he was a felon,[2] and Deluca later informed them that he had been using marijuana earlier that day and was still wearing the same clothes. Officer Norris later theorized that Deluca's clothes triggered Maverick to alert.

The government charged Deluca with one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Deluca filed a motion to suppress the evidence obtained in the traffic stop, raising a number of issues including that Officer Freeman lacked reasonable suspicion in order to conduct the traffic stop and lacked probable cause to conduct the search of the vehicle that uncovered the gun. To support probable cause for the search, the government relied on Maverick's alert on the vehicle. At the evidentiary hearing on the motion, Officer Norris testified that Maverick was trained to alert for only four substances: marijuana, cocaine, heroin, and methamphetamine. On cross-examination however, Officer Norris admitted that he was unsure what part of the marijuana plant that Maverick was able to identify, meaning that he did not know whether the dog could distinguish hemp—a legal substance in Wyoming—from marijuana.

The district court denied the motion to suppress, finding that Officer Freeman had both reasonable suspicion to justify the stop and probable cause to justify the

---

[2] Deluca first admitted this in an initial statement to Officer Norris at the front of the patrol car. The District Court suppressed this statement because Officer Norris had failed to provide a Miranda warning. However, Officer Norris later provided a Miranda warning in the patrol car, and Deluca again discussed his prior convictions after waiving his Miranda rights. The District Court found these latter statements to be admissible and not tainted by the first unwarned admission. This conclusion was not challenged on appeal.

4

search of the vehicle.  The parties disagree on appeal as to whether the district court made a factual finding on whether Maverick would alert on hemp in determining that probable cause for the search existed.  Deluca pled guilty following the denial of his motion to suppress.  He was sentenced to 120 months' imprisonment plus three years of supervised release.  Deluca now appeals to this court, arguing that the district court erred in finding that Officer Freeman had reasonable suspicion for the stop and in failing to make an essential factual finding in determining that the officers had probable cause to search the vehicle.

## II.    DISCUSSION

### A. Officer Freeman's traffic stop was justified by reasonable suspicion.

Deluca contends that the district court erred in denying his motion to suppress because Officer Freeman lacked reasonable suspicion to stop him.  The government argues that Officer Freeman had reasonable suspicion that Deluca's car was unregistered when Freeman queried the permanent license plate in his database and it returned as "unregistered."[3]  While this theory of reasonable suspicion is raised for the first time on appeal, we are free to exercise our discretion to affirm the denial of a suppression order on alternative grounds "when the record below is sufficient to permit [this Court] to

---

[3] The government also argues that reasonable suspicion was established by the simultaneous display of an unregistered permanent license plate and a temporary permit, which it argued is unlawful under either Pennsylvania or Wyoming state law or in any event supports an officer's objectively reasonable mistake in believing it was unlawful. The district court below found that Officer Freeman had reasonable suspicion due to the simultaneous display of the plates violating Pennsylvania law. We need not reach this theory as we find the stop to be justified based upon reasonable suspicion that the vehicle was unregistered.

conclude, as a matter of law, that [d]efendant's Fourth Amendment rights were not violated." United States v. Nelson, 868 F.3d 885, 891 (10th Cir. 2017) (quoting United States v. Mora, 293 F.3d 1213, 1216 (10th Cir. 2002)).  Here the record is sufficient to support the conclusion that Officer Freeman had reasonable suspicion that Deluca's vehicle was unregistered in order to conduct the traffic stop.

A routine traffic stop is a seizure within the meaning of the Fourth Amendment and must be reasonable.  Delaware v. Prouse, 440 U.S. 648, 653 (1979).  Because a routine traffic stop is more akin to an investigative detention than a custodial arrest, a traffic stop is reasonable if (1) "the officer's action was justified at its inception," and (2) the officer's action "was reasonably related in scope to the circumstances which justified the interference in the first place."  United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir. 1995) (en banc).  A routine stop is justified when reasonable articulable suspicion exists to believe a traffic violation has occurred.  See id. at 787.  In evaluating reasonable suspicion, we must look at the totality of the circumstances to see whether a reasonable officer in Officer Freeman's position would have had a "particularized and objective basis" for suspecting legal wrongdoing.  United States v. Arvizu, 534 U.S. 266, 273 (2002).  Officer Freeman's subjective beliefs as to the basis for the stop are irrelevant.[4]  Whren v. United States, 517 U.S. 806, 813 (1996).  In reviewing the denial of a motion to suppress, this court reviews a district court's factual determinations for

---

[4] Deluca makes a host of arguments based on the subject beliefs of Officer Freeman. These are irrelevant under Whren.

6

clear error and the ultimate determinations of reasonableness under the Fourth

Amendment de novo. United States v. Patten, 183 F.3d 1190, 1193 (10th Cir. 1999).

The government attempts to justify the stop by arguing that Officer Freeman had

reasonable suspicion that Deluca's vehicle was unregistered because Officer Freeman

queried the permanent license plate on the car, and it came up "unregistered."  We have

"regularly upheld traffic stops based on information that the defendant's vehicle's

registration failed to appear in a law enforcement database."  United States v. Esquivel-

Rios, 725 F.3d 1231, 1235 (10th Cir. 2013); see also United States v. Stephens, 350 F.3d

778, 780 (8th Cir. 2003) ("In this case, the information obtained from a computer check

. . . provided the police with reasonable suspicion to stop the vehicle and investigate

whether the vehicle was properly registered and whether Stephens was operating the

vehicle with a valid license.").  Deluca argues that his case is distinct because Officer

Freeman also spotted a temporary permit displayed in the back window of the car.

However, even the unusual display of a temporary permit where the officer struggles to

read the number alone can give rise to reasonable suspicion for an officer to stop a

vehicle.  See United States v. McSwain, 29 F.3d 558, 561 (10th Cir. 1994) (noting that

the defendant had conceded that there was reasonable suspicion for a stop where the

officer could not read the temporary permit).  Reasonable suspicion does not require an

officer to rule out the possibility of innocent conduct—here, the possibility that perhaps

the temporary license plate was properly registered.  United States v. Arvizu, 534 U.S.

266, 277–78 (2002) (citing Illinois v. Wardlow, 528 U.S. 119, 125 (2000)) ("A

determination that reasonable suspicion exists . . . need not rule out the possibility of

7

innocent conduct" as long as the totality of the circumstances suffices to form a "particularized and objective basis" for the stop.).  As there was a particularized basis to believe that the car was unregistered based on the database result, and Freeman's inability to read the permit, we conclude that the stop was justified in its inception by reasonable suspicion.

Deluca contends next that even if the stop was justified in its inception the scope of the stop performed by Officer Freeman exceeded what the circumstances permitted. An "unregistered" result in a database search for the license plate number displayed on a car gives reasonable suspicion only "to stop the vehicle and investigate whether the car was properly registered."  Stephens, 350 F.3d at 780.  Deluca suggests that all Officer Freeman was permitted to do after the stop was to get a closer look at the temporary permit and confirm that it was valid without asking any questions.  According to Deluca, Officer Freeman's request for a driver's license and additional questions were not permitted.

In support of this, Deluca cites McSwain, 29 F.3d at 561, where we held that an officer who struggled to read a temporary license plate exceeded the permissible scope of a traffic stop by questioning and requesting the suspect's driver's license.  McSwain however rests on the fact that reasonable suspicion dissipated after the officer read and confirmed the validity of the temporary permit prior to questioning the driver and requesting a license.  Id.  We noted that where the reasonable suspicion has not dissipated, the officer may still proceed with a brief questioning and request for a license. Id.  Here, unlike in McSwain, reasonable suspicion did not dissipate upon confirming the

validity of the temporary permit. While Officer Freeman was able to better see the temporary permit and confirm its validity as he approached the car, he still had reasonable suspicion that the car was unregistered based on the unregistered permanent plate on the vehicle and the unusual simultaneous display of the plates. It was therefore reasonable for him to proceed to ask Deluca for his license and registration. Thus, the scope of the stop was not unreasonable given the basis for the stop.

We therefore find that Officer Freeman had reasonable suspicion to stop Deluca, and his stop was justified both in its inception and scope.

### B. The district court did not violate Rule 12 of the Federal Rules of Criminal Procedure when it declined to resolve a factual question as to whether the drug dog was trained to alert on hemp.

In his motion to suppress in the district court, Deluca contended that the officers lacked probable cause to search Deluca's vehicle. The government's argument for probable cause was that Maverick, the drug dog, had alerted on the vehicle. Deluca responded on the basis of information and belief that Maverick was trained to alert on hemp—a legal substance in Wyoming—in addition to controlled substances, and if so the alert of a dog trained to alert on legal substances, as well as illegal ones could not provide probable cause for a search of a vehicle. On appeal, Deluca argues that the district court failed to make a factual finding on the record, in violation of Rule 12 of the Federal Rules of Criminal Procedure, as to whether Maverick was trained to alert on legal hemp. Deluca seeks reversal of the district court's probable cause determination and remand for the district court to resolve this factual issue.

9

Fact-finding is a basic responsibility of the of district courts. <u>United States v. Ramstad</u>, 219 F.3d 1263, 1265 (10th Cir. 2000). Rule 12(d) of the Federal Rules of Criminal Procedure states that "where factual issues are involved in determining a motion, the court shall state its essential findings on the record." However, "[a] district court need not place all of its findings on the record provided the essential bases of its decision are apparent." <u>Ramstad</u>, 219 F.3d at 1265.

First, we must determine whether the district court actually failed to make the factual finding at issue. The government contends that the district court did find that Maverick was not trained to alert on hemp when it stated in its order: "Maverick alerted to the presence of one of the four controlled substances which he is trained to identify (marijuana, heroin, methamphetamine and cocaine)." Aple. Br. at 25 (citing ROA Vol I. at 94). But the court added this in a footnote to that statement:

> Officer Norris testified that Maverick is not trained or certified to alert on hemp. On cross-examination, Officer Norris recognized that hemp is closely-related to marijuana with a minute amount of THC. He could not identify the specific component(s) of marijuana that Maverick recognizes. <u>However, the possibility of false-positives regarding hemp is not dispositive in this case</u>. It is not disputed that Defendant said he had smoked marijuana that day in the same clothes, and Defendant does not contend that hemp was in the car.

ROA Vol. I 94 n. 4 (emphasis added). Based on this statement, we conclude that the district court declined to resolve this factual issue as it merely found the question regarding hemp was not dispositive as to whether the officers had probable cause.

The question under Rule 12 then becomes whether this factual finding was "essential" to the outcome of the probable cause question. We find that it is not essential because probable cause existed even if Maverick was trained to alert on hemp in addition

10

to the other controlled substances. "Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175–76 (1949). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 231 n. 13 (1983).

It is undisputed that Maverick was trained to alert on marijuana, heroin, methamphetamine, and cocaine. If hemp was added to this list of four controlled substances, Maverick's alert on a car would still give rise to a high probability that a controlled substance is in the car as four of the five substances that Maverick could detect are illegal.[5] Thus, we find that the officers had probable cause to search the car regardless of whether Maverick was trained to alert on legal hemp. This was therefore not an essential factual finding, and so the district court did not need to resolve it on the record under Rule 12. We affirm the denial of the motion to suppress.

---

[5] Deluca presented no evidence and no argument about how common it is that hemp is found in a vehicle in the absence of other controlled substances.

11

**CONCLUSION**

For the above reasons, we AFFIRM the district court's denial of the motion to suppress.

Entered for the Court

David M. Ebel
Circuit Judge