**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 98-20144**
_____



**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**v.**

**HECTOR VALENCIA-GONZALES,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Southern District of Texas**
_____

**April 9, 1999**

Before JONES, SMITH, and EMILIO M. GARZA, Circuit Judges.


EDITH H. JONES, Circuit Judge:

Valencia pled guilty to possession of a controlled substance with intent to distribute under 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(i) and importation of a controlled substance under 21 U.S.C. § 952(a) and § 960(a)(1) and (b)(1)(A). He challenges his sentence because he believed -- and the government stipulated he believed -- that he was carrying cocaine, when in fact he was carrying heroin, for which he received a longer sentence than if he had been carrying cocaine. We reject all three of Valencia's challenges to his sentence.

I.

Valencia's first argument apparently is that Due Process requires a mens rea to be imported into sentencing, so that his subjective belief that he was carrying cocaine would control his sentence, even though the underlying crime required only possession of a "controlled substance."

Valencia's legal challenge to his sentence is reviewed de novo.  See United States v. Shaw, 920 F.2d 1225, 1228 (5th Cir. 1991).

Valencia does not dispute that he had the mens rea required for guilt under both statutes; he knew he possessed a "controlled substance."  For sentencing, however, Valencia invokes "the fundamental Anglo-American tradition" of calibrating punishment to culpability.  This language comes from a 48-page opinion by Judge Weinstein holding precisely what Valencia argues.  See United States v. Cordoba-Hincapie, 825 F. Supp. 485, 488 (E.D.N.Y. 1993).  Valencia also appeals to the Model Penal Code, which allows a mistake of fact to control sentencing, and some dicta in United States v. Gonzalez, 700 F.2d 196 (5th Cir. 1983).[1]

These authorities are insufficient to outweigh the Supreme Court's characterization of the constitutional limits on

---

[1]Discussing jury instructions that allowed conviction even when a defendant did not know what controlled substance he possessed, the Gonzalez court observed: "Such an instruction does not encourage the jury to convict a defendant for possessing some controlled substance carrying a lesser penalty than heroin when, as here, the substance found in the car concededly was heroin and there was no evidence that Gonzalez believed the car contained any other controlled substance."  700 F.2d at 201.

sentencing and the clear decision by Congress to make drug dealers assume the risk of what kinds and amounts of controlled substances they carry.

In evaluating an allegedly irrational sentencing scheme for distribution of LSD, the Supreme Court commented: "a person who has been ... convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment." Chapman v. United States, 500 U.S. 453, 465, 111 S. Ct. 1919, 1927 (1991) (citations omitted). The Chapman Court found Congress's LSD sentencing provisions had a "rational basis." Id. The Court even went so far as to hold that a sentencing scheme that fails to "consider[] individual degrees of culpability ... would clearly be constitutional," because "Congress has the power to define criminal punishments...." Id. at 467, 111 S. Ct. at 1928.

The statutes for possession and importation each distinguish between the specific intent necessary for the "unlawful act," 21 U.S.C. §§ 841(a)(1), 952(a), 960(a), and a strict liability punishment based on which controlled substance, and how much of it, is involved in the offense, 21 U.S.C. §§ 842(b)(1)(A)(i), 960(b)(1)(A); see also U.S.S.G. § 2D1.1(c) (drug quantity table). Congress certainly had a rational basis to "resolve that there is some deterrent value in exposing a drug

3

trafficker to liability for the full consequences, both expected and unexpected, of his own unlawful behavior." United States v. Strange, 102 F.2d 356, 361 (8th Cir. 1996). See also United States v. Salazar, 5 F.3d 445, 446 (9th Cir. 1993); United States v. Collado-Gomez, 834 F.2d 280, 281 (2d Cir. 1987).

The district court did not err in sentencing Valencia according to the drug he was carrying rather than the drug he believed he was carrying.

**II.**

Valencia's second argument is that the district court erred in denying his motion for a downward departure on grounds of his mistaken belief that he was carrying cocaine.

This court can review a district court's refusal to depart from the guidelines "only if the district court based its decision upon an erroneous belief that it lacked the authority to depart. Moreover, something in the record must indicate that the district court held such an erroneous belief." United States v. Landerman, 167 F.3d 895, 899 (5th Cir. 1999) (citations omitted). Contrary to Valencia's assertion, the district court's summary denial without explanation does not indicate any such erroneous belief. See United States v. Aggarwal, 17 F.3d 737, 745 (5th Cir. 1994). Thus, this court has no jurisdiction to consider this argument.

**III.**

Valencia's third argument on appeal is that the district court erred in denying a downward adjustment for his being a "minor participant" under U.S.S.G. § 3B1.2(b).

In the face of silence, there is no reason to presume, as Valencia does, that the district court relied upon a mistaken legal rule in denying the adjustment. We review the district court's denial for clear error. See United States v. Luqman, 130 F.3d 113, 117 (5th Cir. 1997), cert. denied, 118 S. Ct. 1855 (1998).

A downward adjustment is appropriate "only where a defendant was 'substantially less culpable than the average participant.'" United States v. Brown, 54 F.3d 234, 241 (5th Cir. 1995) (ultimately quoting U.S.S.G. § 3B1.2 (background)). Valencia contends he was a mere "mule," but he admitted that he was to be paid $14,000 for his role, that he transported the heroin from Colombia to Houston, that he was supposed to meet a co-conspirator in San Antonio, and that they were to travel together to New York. (During a controlled delivery, his co-conspirator did not meet him, making it possible to infer that Valencia had misrepresented his role.) Valencia was carrying a non-trivial quantity of heroin (1005 grams). Furthermore, he was sentenced only for the amount that he was actually carrying. See United States v. Marmolejo, 106 F.3d 1213, 1217 (5th Cir. 1997); United States v. Flucas, 99 F.3d 177, 181 (5th Cir. 1996). Under the circumstances, the district court did not clearly err in concluding that Valencia's role was not minimal.

**IV.**

For the foregoing reasons, Valencia's appeal of the district court's refusal to grant a downward departure is **DISMISSED**. All other aspects of Valencia's sentence are **AFFIRMED**.