**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 00-60755
(Summary Calendar)
_____

JOHN CLARK WILLIS,

Petitioner,

versus

UNITED STATES PAROLE COMMISSION,

Respondent.

_____

Appeal from the Determination
of the United States Parole Commission
(18 USC 4106 A)

_____

June 1, 2001

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[1]

John Clark Willis ("Willis") appeals his release-date determination by the United States Parole Commission (the "Commission"). Willis asserts several claims, including one alleging legal error by the Commission in refusing to depart below his Guidelines sentencing range. Concluding that we lack

---

[1]Pursuant to 5TH Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH Cir. R. 47.5.4.

1

jurisdiction to review the departure claim, we dismiss Willis's appeal of that issue. Finding no reversible error after reviewing his remaining claims, we affirm the Commission's determination.

I.

FACTS AND PROCEEDINGS

Willis was arrested in June 1994 by officers of the Mexican Federal Judicial Police after heroin was discovered on his person and in his luggage at the airport in Mexico City. According to Willis, an ex-Marine, his journey to Mexico began in Chicago, where he provided security for various nightclubs. Willis was initially approached at one of the clubs by someone known as "Mr. Colin" who purported to recruit Willis to work as a bodyguard for musical groups in Thailand. Willis accepted the offer, obtained a passport, received plane tickets (along with $3000 in cash), and flew to Thailand.

When Willis arrived in Thailand, individuals known to him only as "Michael" and "Tony" met him at the airport and checked him into a hotel. Several days later, Michael and Tony arranged for Willis to fly to Phuket for a "meeting" about the bodyguard assignment. Shortly after Willis arrived in Phuket, however, all pretense was dropped and he was told to transport a package to Guatemala or else "figure out how you're getting home, if you get home." Willis suspected that he was being asked to carry drugs, but nevertheless agreed to do as he was told.

Willis was to fly from Bangkok to Guatemala by way of

2

Amsterdam; he was to be paid $500 on arrival in Guatemala and $10,000 on his return to Bangkok. The flight from Amsterdam to Guatemala stopped in Mexico City, where Willis deplaned and his "nervous" appearance caught the attention of the Mexican police. When Willis was approached by the police and asked to accompany them to their office so that his luggage could be searched, Willis volunteered that he was carrying drugs of an unknown kind that were hidden in a false compartment in his luggage and in specially made underpants that he was wearing. A search of the luggage and underpants led to the discovery of 6.877 kilograms of heroin. During Willis's interrogation, the Mexican police struck him several times in the back with the butt of an M-16 rifle.

Willis was arrested and charged with introduction and transportation of heroin into Mexico. Although he initially admitted his possession of illegal drugs to the Mexican authorities, Willis subsequently argued at trial on the advice of his Mexican counsel that the substance he was carrying was not heroin and that the Mexican police did not find any illegal substance in his possession when they searched him at the airport. The Mexican court credited Willis's original inculpatory statement, convicted him of the charge, and sentenced him to ten years' imprisonment.

Willis served more than five years of his sentence in a Mexican prison. During his incarceration in Mexico, Willis was subjected to what the Commission itself describes as a "severe

abuse situation," including denial of food and medical treatment, constant demands by the prison authorities for payment to "protect" him from threats against his life by other prisoners,[2] and an internationally reported 28-hour prison riot by inmates on Christmas Eve 1998, during which Willis was held at gunpoint by inmates attempting to escape from the prison.

After serving more than one-half of his ten-year sentence in Mexico, Willis was finally transferred to the United States pursuant to a prisoner transfer treaty.[3]  Following Willis's transfer, the Commission concluded, pursuant to 18 U.S.C. § 4106A, that Willis should serve the full term of his ten-year sentence. More specifically, the Commission determined that a 121-to-151-month sentencing range was appropriate, and ordered a release date after 120 months, to be followed by a 60-month period of supervised release.  Willis timely appeals the Commission's release-date determination.

## II.

## ANALYSIS

A.  Standard of Review

We decide an appeal of a release-date determination by the

---

[2]Willis's mother estimates that over the course of her son's five-year imprisonment in Mexico, each month she paid $300 to $600 requested by the prison director to "protect" her son's life, in addition to paying thousands of dollars in "cell rental" and "renovation" costs.

[3]See Treaty on Execution of Penal Sentences, Nov. 25, 1976, U.S.-Mex., 28 U.S.T. 7399, T.I.A.S. No. 8718.

Commission as though the determination had been a sentence imposed by a United States district court.[4]  Accordingly, we have no jurisdiction to review a refusal to depart below the Guidelines' sentencing range unless the Commission based its decision not to depart on an erroneous belief that it lacked the authority to do so.[5]

B.  Refusal to Depart for Severe Abuse or Torture

Willis contends that the Commission erroneously believed that it lacked the authority to depart downward from the Guidelines on the basis of the "severe abuse" that the Commission itself found that he suffered while incarcerated in Mexico.[6]  More specifically, Willis argues that the Commission denied his request for a downward departure under the mistaken belief that only a finding of "torture" or its equivalent would permit departure.  We must disagree.

The Sentencing Guidelines permit departure if mitigating or aggravating circumstances have not been adequately taken into consideration by the Guidelines themselves.[7]  Congress has explicitly identified the "harsh treatment" meted out in foreign

---

[4]18 U.S.C. § 4106A(b)(2)(B).

[5]United States v. Valencia-Gonzales, 172 F.3d 344, 346 (5th Cir. 1999).

[6]Although Willis raises several issues on appeal, we are convinced after a thorough review of the law and the record that only this one has enough merit to warrant discussion.

[7]18 U.S.C. § 3553(b).

prisons as one such circumstance:

> Because the conditions in foreign prisons and the treatment of persons arrested by foreign authorities may vary considerably from the conditions in federal prisons and the treatment of persons arrested in this country, it can be expected that the Parole Commission will have to decide what impact harsh treatment in another country should have upon the Parole Commission's determinations on imprisonment and supervised release. If, for example, the Parole Commission finds that the prisoner was abused when interrogated, the Parole Commission could use that fact to justify a period of imprisonment at the bottom of the [G]uideline range. If the Parole Commission finds that a prisoner who transfers to the United States had been tortured in the sentencing country, from which the prisoner transfers, then that finding could be a basis for the Parole Commission to depart below the applicable [G]uideline range.[8]

The Commission's own Rules and Procedures Manual elaborates that "[a] downward departure may be warranted in the case of torture . . . or other severe abuse (including inhumane prison conditions[,]" and explains that "cases of severe abuse (especially where permanent physical or psychological injury is inflicted) may warrant a decision below the [G]uidelines just as in the case of torture."[9] The Rules and Procedures Manual distinguish "torture" and "severe abuse" on the basis of whether the infliction is "officially instigated," and not on the basis of the magnitude or incidence of the pain and suffering.[10]

In the instant case, the Commission considered a downward

---

[8]See 134 Cong. Rec. 33,302 (Oct. 21, 1988).

[9]U.S. Parole Commission, Rules and Procedures Manual, Appendix 9, chapter 5, part k, at 340-41 (1996) (emphasis added).

[10]Id. at 340.

departure, but declined to grant one. The transcript of the colloquy between counsel for Willis and the hearing examiner produces substantial ambiguity on the question and is thus insufficient to answer definitively whether the examiner understood that he could depart from the Guidelines on the basis of "severe abuse" as well as torture.[11] Any misunderstanding on the part of the examiner, however, is irrelevant because in reviewing the examiner's determination, the Commission's Legal Office expressly noted that "cases of 'severe abuse' may warrant a decision below the [G]uidelines, as in the case of torture."

It is thus apparent to us that the Commission believed — correctly — that both "torture" and "severe abuse" permit, but do not require, a departure from the Guidelines. Accordingly, the Commission's discretionary decision to decline Willis's request for a downward departure is unreviewable. When the Commission understands that it has the authority to depart from the Guidelines, but determines that the case at hand does not warrant departure, we may not "second guess" or otherwise question the Commission's decision, even if we might have chosen differently had the initial decision been ours to make.

III

---

[11]For example, the examiner's statement that Willis's "conditions during the course of his confinement . . . meet the level of severe abuse rather than torture" may be read to suggest that a finding of "severe abuse" is insufficient to justify a downward departure.

7

CONCLUSION

For the reasons explained above, Willis's appeal of the Commission's refusal to grant his request for a downward departure from the Guidelines is DISMISSED for lack of jurisdiction and the Commission's determination is AFFIRMED in all other respects.