**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 01-40361**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**RAYMOND ALVIN RAMOS,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
For the Southern District of Texas
_____

(C-00-CR-320-1)

March 4, 2002

Before SMITH and DeMOSS, Circuit Judges, and DUPLANTIER, District Judge.[*]

PER CURIAM:[**]

Defendant-Appellant, Raymond Alvin Ramos (Ramos), was convicted under 21 U.S.C. § 841(a)(1) and (b)(1)(D) for possession of less than 50 kilograms of marijuana with the intent to

_____

[*]District Judge for the Eastern District of Louisiana, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

distribute. Ramos also was convicted under 21 U.S.C. § 841(a)(1) and (b)(1)(A) for possession of more than five kilograms of cocaine with the intent to distribute. We AFFIRM Ramos' convictions. However, we modify his sentence concerning the special conditions set forth in the district court's written judgment but not orally pronounced at sentencing.

## BACKGROUND

On August 23, 2000, Ramos attempted to cross the Sarita checkpoint in Kingsville, Texas. Ramos, who was driving a pick-up truck, was accompanied by a female passenger later identified as Rana Dababneh (Dababneh). Border Patrol Agent Marcus Harrington asked Ramos and Dababneh about their citizenship. While Agent Harrington was speaking with Ramos and Dababneh, Border Patrol Agent Jaime Hicks advised Agent Harrington that an inspection of the truck was necessary because the narcotics canine had alerted to the truck before it had even come to a stop. During the search, the agents located approximately 45 kilograms (99 pounds) of marijuana and 10 kilograms (23 pounds) of cocaine in a hidden compartment within the gas tank. Ramos claimed that, although he knew he was transporting marijuana, he did not know he was transporting cocaine.

On September 19, 2000, a grand jury indicted Ramos on one count of possession with the intent to distribute less than 50

2

kilograms of marijuana under 21 U.S.C. § 841(a)(1) and (b)(1)(D) (Count 1). Ramos was also indicted on one count of possession with the intent to distribute more than five kilograms of cocaine under 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Count 2). Ramos was tried before a jury from November 6 through November 8, 2000. Following the trial, the jury was unable to reach a unanimous verdict on either count.

Thereafter, the government and Ramos entered into a plea agreement under which Ramos agreed to plead guilty to Count 1 for possession with the intent to distribute the marijuana. In addition, Ramos agreed to cooperate with the government. Count 1 carried a maximum term of 60 months imprisonment. In exchange for that plea agreement, the government agreed to move to dismiss Count 2 for possession with the intent to distribute the cocaine, which carried a mandatory minimum sentence of 120 months imprisonment.

Without first obtaining a presentence report, however, the district judge rejected the plea agreement as being unduly lenient. The judge stated that even if Ramos did not know he was transporting cocaine, he could be convicted on the cocaine count if he knew that he was carrying a controlled substance. Urging the judge to accept the proposed plea agreement, the government argued that although Ramos was subject to the mandatory minimum sentence of 120 months imprisonment on Count 2, based on the cooperation provision of the proposed plea agreement, the government would move for a downward departure from Ramos' guideline sentence if he was

convicted on that count. The government indicated that it intended to request at least a 50 percent reduction in Ramos' sentence. If granted, Ramos could be sentenced to approximately 60 months imprisonment on Count 2, which was the same sentence he would have received if he were allowed to plead guilty to only Count 1. The judge, nevertheless, was not persuaded.

A second jury trial took place on January 8 and 9, 2001. On January 9, the jury returned a verdict finding Ramos guilty of both charges. On March 29, 2001, the district court sentenced Ramos to a term of 144 months imprisonment and a five year term of supervised release on Count 2 for possession with the intent to distribute the cocaine. Additionally, the court sentenced Ramos to a concurrent 60 month term of imprisonment and three years of supervised release on Count 1 for possession with the intent to distribute the marijuana.

## DISCUSSION

Ramos now appeals his convictions and sentences. First, Ramos contends that the district court abused its discretion in rejecting the plea agreement offered by the government. Second, Ramos complains that the district court committed plain error by failing to state at the sentencing hearing the reasons for imposing a particular sentence within a Sentencing Guideline range that exceeded 24 months. Third, Ramos argues that the district court

4

erred by including, in its written judgment of conviction, special conditions of supervised release that were not orally pronounced at sentencing.

Having reviewed the entire record of this case, and having fully considered the parties' respective briefing on the issues in this appeal, we affirm the district court's judgment with respect to the first two issues raised. However, we find that the district court erred by including, in its written judgment of conviction, special conditions of supervised release that were not orally pronounced at sentencing.

First, we find that the district court did not abuse its discretion in rejecting the plea agreement offered by the government. Ramos argues that under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the type of drug possessed is an element of a section 841(a)(1) offense and, therefore, the government must prove that he had the specific intent to possess cocaine. However, this Court has consistently held that the specific intent requirement under section 841(a) is knowledge that the substance possessed is a controlled substance, not knowledge of the specific type of controlled substance possessed. *United States v. Valencia-Gonzales*, 172 F.3d 344, 345-46 (5th Cir. 1999); *United States v. Cartwright*, 6 F.3d 294, 303 (5th Cir. 1993); *United States v. Fragoso*, 978 F.2d 896, 902 (5th Cir. 1992). *Apprendi* does not require this Court to change its reading of the statute.

Second, the district court did not commit plain error by failing to state at the sentencing hearing the reason for imposing a particular sentence within a Sentencing Guideline range that exceeded 24 months. Title 18 U.S.C. § 3553(c)(1) provides: "The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence-is of the kind, and within the range, described in subsection (a)(4) and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range." Ramos' sentencing range was 135 to 168 months. The district court orally imposed a 144 month term of imprisonment. The "Imprisonment" section of the written judgment imposes the same 144 month term of imprisonment. However, the "Statement of Reasons" section of the written judgment states that the term of imprisonment is 135 months.

Ramos asserts that the district court failed to comply with section 3552(c)(1), and that the written explanation contained in the "Statement of Reasons" section of the written judgment does not satisfy the statute's requirements. However, based on the transcripts of the court's oral colloquy during Ramos' sentencing hearing, it is clear that the district court properly sentenced Ramos to 144 months of imprisonment and stated orally the reasons for imposing the particular sentence. The only logical conclusion for the discrepancy that Ramos refers to, is that the numeral "135" in the "Statement of Reasons" section of the written judgment is

6

merely a clerical error.  We find that such a clerical error does not create doubts as to the period of incarceration the district court intended to impose, and that the error did not affect his substantial rights.

However, we do find that the district court erred by including, in its written judgment of conviction, special conditions of supervised release that were not orally pronounced at sentencing.  At the sentencing hearing, the district court imposed concurrent sentences of supervised release on Ramos.  In so doing, the court imposed the following special conditions:  "In addition to the fine and payment, [Ramos] shall participate in a treatment for drug and alcohol abuse and addiction."  However, the written judgment of conviction adds to this:  "The defendant shall further submit to drug detection techniques in addition to those performed by the treatment agency, as directed by the probation officer.  The defendant will incur costs associated with such monitoring, based on ability to pay as determined by the probation officer."

In *United States v. Martinez*, 250 F.3d 941, 942 (5th Cir. 2001), this Court concluded that "when there is a conflict between a written sentence and an oral pronouncement, the oral pronouncement controls.  If, however, there is merely an ambiguity between the two sentences, the entire record must be examined to determine the district court's true intent."  In the case at hand, the oral sentence imposed a special condition of supervised release

7

requiring Ramos to participate "in a treatment for drug and alcohol abuse and addiction." The special condition imposed in the written judgment is considerably more far-reaching. It imposes not only "treatment for drug and alcohol abuse and addiction," but also a separate requirement that the defendant submit to drug testing in addition to that performed by the treatment agency in the course of the drug treatment program. Thus, there is a conflict between the oral and written pronouncements of Ramos' sentence.

Where there is a conflict between the oral and written sentences, the oral sentence prevails. *Id.* Therefore, we excise the portion of the written sentence that states: "The defendant shall submit to drug detection techniques in addition to those performed by the treatment agency, as directed by the probation officer. The defendant will incur costs associated with such monitoring, based on ability to pay as determined by the probation officer."

## CONCLUSION

We hold that the district court did not abuse its discretion in rejecting the plea agreement offered by the government. Furthermore, the district court did not commit plain error by failing to state at the sentencing hearing the reason for imposing a particular sentence within a Sentencing Guideline range that exceeded 24 months. However, we hold that the district court erred

8

by including special conditions of supervised release that were not orally pronounced at sentencing. We therefore modify Ramos' sentence to reflect this fact by excising those special conditions.