**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1989
_____

UNITED STATES OF AMERICA

v.

ANDREW POPE,
            Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-22-cr-00346-003)
U.S. District Judge: Honorable Malachy E. Mannion
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 1, 2025
_____

Before: SHWARTZ, MATEY, and FISHER, <u>Circuit Judges</u>

(Filed: October 14, 2025)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Andrew Pope appeals his sentence for conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846. Because the District Court properly held him responsible for conspiring to distribute and possess with intent to distribute 467 grams of methamphetamine, we will affirm the sentence.

I

Law enforcement learned from intercepted communications and surveillance that (1) Pope obtained methamphetamine and other drugs from his codefendant, Gerinardo Rivera, and sold those drugs to customers; (2) Rivera referred customers to Pope when Rivera was unavailable; and (3) Pope frequently updated Rivera on drug distribution to customers. During a transaction, Pope asked Rivera for crack cocaine, but Rivera apparently misunderstood Pope's coded request and instead provided him with 425 grams of methamphetamine. Upon realizing that he had not received crack cocaine, Pope returned Rivera the methamphetamine.[1]

Pope was thereafter charged with and pled guilty to conspiring to distribute and possess with intent to distribute fentanyl, methamphetamine, cocaine, and marijuana. Before sentencing, the Probation Office prepared a Presentence Report ("PSR") that recommended Pope be held responsible for at least 30 grams of fentanyl and 467 grams

---

[1] At sentencing, Pope conceded that "he probably assumed" the methamphetamine would "be re-distributed to someone else." App. 68.

of methamphetamine, resulting in a base offense level of 30.  Of the 467 grams of methamphetamine attributed to Pope, 425 grams were related to the transaction described above.[2]

At sentencing, Pope objected to the inclusion of the 425 grams of methamphetamine in calculating his base offense level, claiming that he mistakenly received methamphetamine instead of the crack cocaine he had requested and immediately returned it.  The District Court overruled Pope's objection and explained that the methamphetamine was "possessed with intent to distribute by both . . . Pope and . . . Rivera" during the relevant transaction, "because [Pope] actually possessed it before he gave it back to [Rivera]."  App. 74.  The District Court further found the transaction was "part of the conspiracy for which [Pope] pled guilty" and "clearly relevant conduct" because both Pope and Rivera "possessed" the methamphetamine "with intent to distribute . . . on that day."  App. 74.  As a result, the District Court included those 425 grams of methamphetamine in its Sentencing Guidelines calculation, and then reduced the base offense level of 30 by five due to Pope's acceptance of responsibility and a departure motion.  With a Criminal History Category of VI, the District Court calculated Pope's Guidelines range to be 110 to 129 months.[3]  The District Court sentenced Pope to

---

[2] The remaining 42 grams of methamphetamine attributed to Pope were related to a separate transaction during which Pope ordered and received 42 grams of methamphetamine and 10 grams of fentanyl from Rivera.  PSR ¶ 32.

[3] This appears to be an error, as an offense level of 25 with a Criminal History Category of VI yields a Guidelines range of 110 to 137 months.  See U.S.S.G. Ch.5, Pt. A

3

120 months' imprisonment, followed by five years' supervised release.

Pope appeals.

II[4]

Pope's argument that the District Court erred in calculating his base offense level to include the 425 grams of methamphetamine lacks merit. The Sentencing Guidelines provide that, in determining the drug weight and type attributable to a defendant, a court may consider "all acts . . . committed . . . by the defendant." U.S.S.G. § 1B1.3(a)(1)(A). In other words, at sentencing, a defendant will be held responsible for any controlled substance that he distributed or possessed with intent to distribute. See United States v. Barbosa, 271 F.3d 438, 451 (3d Cir. 2001) (explaining that a defendant is accountable for any drug with which he was directly involved). Applying these principles, the District

_____

(2024) (sentencing table). Pope, however, did not raise this issue at sentencing, and a "forfeited error 'may be noticed' only if it is 'plain' and 'affect[s] substantial rights.'" United States v. Olano, 507 U.S. 725, 732 (1993) (quoting United States v. Young, 470 U.S. 1, 15 n.12 (1985)) (alterations in original). Pope's substantial rights were not affected as the correct Guidelines range is higher than that applied by the District Court. So, if this is an error, we will not notice it.

[4] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. A district court's "factual findings relevant to the Guidelines" are reviewed for clear error. United States v. Grier, 475 F.3d 556, 570 (3d Cir. 2007) (en banc). "A finding is clearly erroneous when[,] although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id. (alterations in original) (internal quotation marks and citation omitted). The District Court's interpretation of the Sentencing Guidelines is reviewed de novo. United States v. Adair, 38 F.4th 341, 347 (3d Cir. 2022).

Court correctly held that Pope was accountable for the 425 grams of methamphetamine.

First, there is no dispute that Pope arranged to purchase a controlled substance from Rivera and intended to sell it. A defendant is accountable for the substance he actually possessed, "notwithstanding his reasonable mistake as to drug identity." Id. at 450-51 (noting that Congress made a "clear" decision "to make drug dealers assume the risk of what kinds and amounts of controlled substances they carry" (quoting United States v. Valencia-Gonzales, 172 F.3d 344, 345 (5th Cir. 1999))). Because Pope sought to obtain a controlled substance with the intent to distribute it and knew that he had obtained a controlled substance, the District Court properly held him responsible for the methamphetamine, even though he intended to receive crack cocaine.

Second, Pope distributed the methamphetamine when he returned it to Rivera. A defendant "'distributes' a dangerous drug when he sells, transfers, gives or delivers [it] to another." United States v. Dawson, 32 F.4th 254, 261 (3d Cir. 2022) (quoting Black's Law Dictionary 475 (6th ed. 1990)). Here, upon realizing that he had obtained methamphetamine instead of crack cocaine, Pope knowingly "transfer[red], g[a]ve[], or deliver[ed]" Rivera the methamphetamine. Id. Therefore, this distribution of the

methamphetamine was attributable to Pope.[5]

Because Pope possessed the 425 grams of methamphetamine with intent to distribute and distributed it to Rivera, the District Court did not err by attributing that drug type and amount to Pope in calculating his Guidelines sentence.[6]

## II

For the foregoing reasons, we will affirm.

---

[5] In Dawson, we declined to adopt a "narrow reading" of "distribution" because "'distribution' and 'delivery' have specific meanings when used in the drug trafficking context." 32 F.4th at 263. "[C]ontext" here refers to "the applicable linguistic context" of "the distribution and transfer of drugs" for purposes of statutory interpretation, not to the circumstances surrounding a particular transaction. Id. at 262 & n.8. Because the motivation for a transfer is not relevant to the question of whether a drug was delivered, the fact that Pope gave Rivera the methamphetamine to "return" it does not impact our analysis.

[6] By affirming the sentence on the ground that Pope distributed the methamphetamine himself, we need not address whether the transaction was within the scope of or in furtherance of the conspiracy to which he pled guilty. See U.S.S.G. § 1B1.3(a)(1)(A) ("[T]he base offense level . . . shall be determined on the basis of . . . all acts . . . committed . . . by the defendant.").